UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKEY S. VILLEGAS,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>　　　　　Defendant. | Case No. CV 10-1700 JC<br><br>MEMORANDUM OPINION AND<br>ORDER OF REMAND |

**I.   SUMMARY**

　　　On March 9, 2010, plaintiff Rickey S. Villegas ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

　　　This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; March 11, 2010 Case Management Order ¶ 5.

///

1    Based on the record as a whole and the applicable law, the decision of the
2 Commissioner is REVERSED AND REMANDED for further proceedings
3 consistent with this Memorandum and Opinion and Order of Remand.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On August 10, 2005, plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income benefits. (Administrative Record ("AR") 104-06, 781-86). Plaintiff asserted that he became disabled on November 18, 1998, due to nerve problems; leg, ankle and back pain; carpal tunnel syndrome; a crushed foot; lumbar spine strain; and diabetes. (AR 104, 156-57). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff, who was represented by counsel, on July 17, 2007, and April 16, 2008. (AR 796-821, 822-38).

On June 25, 2008, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 21-39). Specifically, the ALJ found: (1) plaintiff suffered from the following severe combination of impairments: musculoligamentous strain of the lumbosacral spine, lumbar degenerative disc disease, spondylosis at C5-C6 of the cervical spine, degenerative disc disease of the cervical spine, degenerative changes of the thoracic spine, hypertension, non-insulin dependent diabetes mellitus, an adjustment disorder and/or a mood disorder associated with general medical condition, and alcohol dependence in remission (AR 25-26); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 27); (3) plaintiff retained the residual functional capacity to perform light work with certain limitations[1] (AR 28-29); (4) plaintiff cannot perform his past relevant

---

[1] Specifically, the ALJ determined that plaintiff "has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for about six out of eight hours and also sit for six hours in an eight-hour workday. He must change positions for

(continued...)

1  work (AR 38); and (5) there are jobs that exist in significant numbers in the
2  national economy that plaintiff can perform (AR 38).
3      The Appeals Council denied plaintiff's application for review.  (AR 8-10).
4  **III.  APPLICABLE LEGAL STANDARDS**
5      **A.  Sequential Evaluation Process**
6      To qualify for disability benefits, a claimant must show that he is unable to
7  engage in any substantial gainful activity by reason of a medically determinable
8  physical or mental impairment which can be expected to result in death or which
9  has lasted or can be expected to last for a continuous period of at least twelve
10 months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.
11 § 423(d)(1)(A)).  The impairment must render the claimant incapable of
12 performing the work he previously performed and incapable of performing any
13 other substantial gainful employment that exists in the national economy.  Tackett
14 v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).
15     In assessing whether a claimant is disabled, an ALJ is to follow a five-step
16 sequential evaluation process:
17     (1)    Is the claimant presently engaged in substantial gainful activity?  If
18            so, the claimant is not disabled.  If not, proceed to step two.
19     (2)    Is the claimant's alleged impairment sufficiently severe to limit
20            his ability to work?  If not, the claimant is not disabled.  If so,
21            proceed to step three.
22 ///
23 ///
24 ///

---

26     [1](...continued)
27 five minutes once an hour.  He must use a cane but can ambulate for short distances without it.  He can frequently reach, handle, finger, feel, push, and pull.  [Plaintiff] can occasionally operate
28 foot controls with his left foot, and he can frequently operate them with his right foot.  He can climb, balance, stoop, kneel, crouch and crawl.  He can understand, remember, and carry out short, simplistic instructions."  (AR 28-29).

|   |     |                                                                                       |
|---|-----|---------------------------------------------------------------------------------------|
| (3) | Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. |
| (4) | Does the claimant possess the residual functional capacity to perform his past relevant work? If so, the claimant is not disabled. If not, proceed to step five. |
| (5) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001); see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (ALJ has special duty to fully and fairly develop record and to assure that claimant's interests are considered). The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett, 180 F.3d at 1098); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B. Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

### A. Dr. Iofel's Opinion

Plaintiff argues that the ALJ erred in evaluating the opinion of treating physician Dr. Rina Iofel. (Plaintiff's Motion at 14-21). The Court agrees.

#### 1. Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir.), as amended (1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion. See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because a treating physician "is employed to cure and has

5

1 a greater opportunity to know and observe the patient as an individual." Morgan
2 v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir.
3 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

4     A treating physician's opinion is not, however, necessarily conclusive as to
5 either a physical condition or the ultimate issue of disability. Magallanes v.
6 Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d
7 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not
8 contradicted by another doctor, it may be rejected only for clear and convincing
9 reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). An ALJ can reject the
10 opinion of a treating physician in favor of a conflicting opinion of another
11 examining physician if the ALJ makes findings setting forth specific, legitimate
12 reasons for doing so that are based on substantial evidence in the record. Id. "The
13 ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418,
14 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain
15 why they, rather than the [physician's], are correct." Id.; see Thomas v. Barnhart,
16 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed
17 and thorough summary of facts and conflicting clinical evidence, stating his
18 interpretation thereof, and making findings). "Broad and vague" reasons for
19 rejecting a treating physician's opinion do not suffice. McAllister v. Sullivan, 888
20 F.2d 599, 602 (9th Cir.1989).

21     When they are properly supported, the opinions of physicians other than
22 treating physicians, such as examining physicians and nonexamining medical
23 experts, may constitute substantial evidence upon which an ALJ may rely. See,
24 e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative
25 examiner's opinion on its own constituted substantial evidence, because it rested
26 on independent examination of claimant); Morgan, 169 F.3d at 600 (testifying
27 medical expert opinions may serve as substantial evidence when "they are
28 supported by other evidence in the record and are consistent with it").

**2. Analysis**

Dr. Iofel completed a "residual functional capacity questionnaire" dated July 3, 2007. (AR 679-84). Dr. Iofel opined, among other things, that plaintiff could sit for fifteen minutes or stand for ten minutes at one time; that plaintiff must be permitted to shift positions at will from sitting, standing or walking; that plaintiff would likely need to take a fifteen-minute break every two hours; that plaintiff had substantial manipulative limitations; and that plaintiff would likely miss work more than three times per month because of his impairments. (AR 681-84).

The ALJ provided four reasons for rejecting Dr. Iofel's opinion. First, the ALJ stated that "at the time of her assessment, Dr. Iofel had examined [plaintiff] only once, which puts her essentially in the category of an examining physician." (AR 36). The ALJ's assertion is factually incorrect, as Dr. Iofel examined plaintiff on June 12, 2007 (AR 690-97) and June 27, 2007 (AR 687-89) before completing her assessment on July 3, 2007. In any event, even if Dr. Iofel were considered more akin to an examining physician than a treating physician,[2] this does not absolve the ALJ from providing legally sufficient reasons for rejecting her opinion. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ must provide specific and legitimate reasons for rejecting the contradicted opinion of an examining physician).

The ALJ also wrote that Dr. Iofel's opinion "does not appear to take into consideration the normal EMG/NCS of [plaintiff's] lower extremities." (AR 37). Dr. Iofel ordered an electromyelogram and nerve conduction tests following plaintiff's appointment on June 12, 2007. (AR 696). The tests were performed on

---

[2] See Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) ("'It is not necessary, or even practical, to draw a bright line distinguishing a treating physician from a non-treating physician. Rather, the relationship is better viewed as a series of points on a continuum reflecting the duration of the treatment relationship and the frequency and nature of the contact.'" (quoting Benton v. Barnhart, 331 F.3d 1030, 1038 (9th Cir. 2003)).

June 29, 2007 (AR 698-708) – several days before Dr. Iofel submitted her July 3 assessment.  Thus, contrary to the ALJ's assumption, Dr. Iofel's assessment may have incorporated the results of these tests.  Indeed, although Dr. Iofel did not specifically mention the EMG/NCS tests, she wrote that plaintiff has "possible C6 motor radiculopathy" (AR 679), and the findings of the EMG test included evidence of "possible right C6 acute motor radiculopathy."  (AR 707).  The electrodiagnostic tests also revealed "evidence suggestive of left ulnar motor neuropathy with motor slowing across the elbow," and the studies were interpreted as abnormal.  (AR 707).  The ALJ is correct that the EMG/NCS tests did not reveal any abnormalities in the lower extremities.  (AR 707).  However, there is no showing that an absence of electrophysiological abnormalities in plaintiff's lower extremities undermines Dr. Iofel's assessment.  Thus, the ALJ's conclusion that Dr. Iofel failed to consider the EMG/NCS test results in assessing plaintiff's limitations does not suffice to reject her opinion.

Next, the ALJ wrote that Dr. Iofel's determination of plaintiff's "manipulative limitations is inconsistent with the ultimate determination made by the Veteran's Administration . . . [which] granted only 10 percent disability based on impairment of [plaintiff's] cervical spine." (AR 37).  Without more, this observation does not undermine Dr. Iofel's assessment.  The only basis for plaintiff's claim to the Veteran's Administration appears to have been a "neck and upper back condition," and the decision contains no discussion of potential manipulative limitations.  (AR 742-44).  Even if the decision could be considered to refute Dr. Iofel's assessment of plaintiff's manipulative limitations, this reason would not suffice to discount her opinions concerning plaintiff's other limitations.

The ALJ's remaining reason for rejecting Dr. Iofel's opinion was that he found "nothing in [her] June 12, 2007 report" "[o]ther than the MRI she reviewed" "to support the limitations she assessed."  (AR 37).  This statement fails to discredit Dr. Iofel's opinion for a number of reasons.  First, the ALJ appears to

8

base this reason on his erroneous belief that Dr. Iofel only examined plaintiff once and the questionable assumption that Dr. Iofel did not observe the electrophysiological test results before rendering her opinion. Second, the ALJ appears to suggest that the MRI results do support Dr. Iofel's assessment, and it is unclear what additional evidence he required to accept her opinion. Finally, Dr. Iofel's treatment notes provide additional support for her opinion. Based on her June 12, 2007 examination, she referred plaintiff to the back clinic and prescribed Ultram for his neck and back pain, and ordered EMG/NCS tests for his numbness in the extremities. (AR 696). Following her June 27, 2007 examination, Dr. Iofel prescribed Neurontin for plaintiff's neck and back pain and noted that an EMG was scheduled for his complaints of carpal tunnel syndrome. (AR 688). In light of the prescriptions and referrals stemming from Dr. Iofel's first-hand examinations, the ALJ's statement that "nothing" in Dr. Iofel's reports supports the limitations she assessed does not suffice to discount her opinion.

Remand is warranted for the ALJ to reevaluate Dr. Iofel's opinion.

**B.     Dr. Hannani's Opinion**

Plaintiff contends that the ALJ erred in evaluating the opinion of examining physician Dr. Kambiz Hannani. (Plaintiff's Motion at 21-25). The Court agrees.

Dr. Hannani performed an orthopedic examination of plaintiff on September 1, 2007. (AR 721-24). In his Medical Source Statement, Dr. Hannani opined that, "at one time," plaintiff could sit for six hours or stand or walk for one hour. (AR 726). The ALJ sent a letter to Dr. Hannani requesting clarification of this limitation. (AR 739). The ALJ noted that the "opinion relating to 'at one time' appears to be an opinion that [plaintiff] needs to alternate his position every hour," and asked Dr. Hannani to "provid[e] as much detail as possible concerning the need to alternate positions." (AR 739). Although the ALJ asked several specific questions, Dr. Hannani responded in full that "[a]fter a 5 minute break [plaintiff] can resume sitting or standing or walking." (AR 739). The ALJ included in his

determination of plaintiff's residual functional capacity the requirement that plaintiff "must change positions for five minutes once an hour." (AR 28).

Dr. Hannani's response to the ALJ's inquiry was ambiguous. It is unclear whether Dr. Hannani's statement that plaintiff requires "a 5 minute break" indicates that plaintiff needs to "change positions for five minutes once an hour," as the ALJ determined (AR 28), or whether it indicates that plaintiff must abstain from work activity for five minutes, as plaintiff argues (Plaintiff's Motion at 24-25). This ambiguous evidence triggered the ALJ's duty to develop the record. See Tonapetyan, 242 F.3d at 1150 ("Ambiguous evidence . . . triggers the ALJ's duty to conduct an appropriate inquiry.") (citation and internal quotations omitted). The Court cannot conclude that the ALJ's failure to clarify Dr. Hannani's statement was harmless error, as the vocational expert testified that a five-minute "work break" once an hour would preclude plaintiff from performing all the occupations she identified (AR 836), including those identified by the ALJ at step five. (AR 38-39; see AR 829-35).[3]

## V.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[4]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 24, 2010                    /s/
                                            _____
                                            Honorable Jacqueline Chooljian
                                            UNITED STATES MAGISTRATE JUDGE

---

[3] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[4] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).